UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Paul J. McGrath

   v.                                     Civil No. 14-cv-353-JD
                                          Opinion No. 2016 DNH 118

Warden, New Hampshire State Prison


O R D E R


    Paul J. McGrath, proceeding pro se, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court on charges of second degree assault and criminal mischief.  In support, McGrath alleges that he received ineffective assistance of counsel and that his right to due process was violated by prosecutorial misconduct and evidentiary errors.  The Warden moves for summary judgment on some of McGrath's claims, and McGrath objects.


Standard of Review

    Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]

---

[1] A motion for summary judgment under Federal Rule of Civil Procedure 56 may be considered in a § 2254 proceeding.  See Perri v. Gerry, 2014 WL 2218679, at *1 (D.N.H. May 29, 2014).  In doing so, the court applies the standard under Rule 56 and the standard under § 2254.  Bonney v. Wilson, 817 F.3d 707, 711-12 (10th Cir. 2016).

Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case."  Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).  Reasonable inferences are taken in the light most favorable to the nonmoving party, but unsupported speculation and evidence that "is less than significantly probative" are not sufficient to avoid summary judgment.  Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015) (internal quotation marks omitted).

## Background

The charges against McGrath arose out of an incident between Paul McGrath and his former wife, Donna (now Donna Freeman), on July 19, 2011, at their home in Epsom, New Hampshire.[2]  They began arguing earlier in the day about Freeman's children from a prior marriage.

That evening, after more verbal exchanges, McGrath approached Freeman and made a fist.  She acted defensively to prevent a punch.  McGrath then grabbed Freeman around the throat

---

[2] Paul and Donna are now divorced, and Donna's name is now Donna Freeman.  The court will refer to Paul McGrath as "McGrath" and to Donna Freeman as "Freeman."

with both hands and squeezed so hard that Freeman had trouble breathing.

After Freeman kicked McGrath, he released her.  Freeman went out to her car, ostensibly to retrieve a house key, and locked the car doors.  McGrath got their framed wedding photograph and threw it at the car windshield, which cracked the windshield.  Freeman started the car and drove to her night shift job at Cumberland Farms.

Freeman felt safe at work because McGrath would not walk that far.  When she got to work, Freeman called the Epsom police.  Officer Ferdinand Cruz responded.

Cruz saw that Freeman had red marks on her neck and was upset.  Freeman told him what had happened with McGrath.  While Cruz was talking to Freeman, McGrath called and told her he was sorry.  He asked if she had called the police and threatened to damage things in the house.  Freeman said that she had called the police.  McGrath called back and told her that he was destroying the house.

Cruz photographed the red marks on Freeman's neck and her car's broken windshield.  He then went to McGrath's house but found no one there.  After Cruz left, the police dispatcher called Cruz to report that a neighbor had called Freeman because McGrath was breaking furniture and windows at their home.  Cruz went back to the house but did not find McGrath.  Cruz asked for

3

backup, but the two officers who responded also did not find McGrath.

When Cruz returned to the house at 2:00 a.m., he saw a light on inside.  McGrath came outside with a drink in his hand, but did not show obvious signs of intoxication.  Cruz asked McGrath what had happened.  McGrath answered that he had argued with Freeman and she grabbed his arm.  McGrath said that he put his arm around her neck and choked her, and then Freeman kicked him and walked out of the house.  McGrath presented himself for arrest with his hands behind his back.  Cruz told him that he was under arrest and took him to the police station.

Cruz returned to Cumberland Farms to tell Freeman that McGrath was in jail.  When Freeman got home after work, she found glass in the front yard.  Inside the house, she found broken chairs, other damaged furniture, and smashed glasses and dishes.  Later, Freeman discovered that her son's mattress had been stabbed.  Cruz went back to the house to take photographs of the damage.

Freeman applied for and was granted a restraining order against McGrath.  McGrath did not contest the grounds for the restraining order.

McGrath was charged with one count of second degree assault by strangulation, one count of simple assault, and two counts of criminal mischief.  He was represented by appointed counsel,

4

John M. Draghi.  The state terminated the simple assault charge by nolle prosequi.  The case was tried during May of 2012. McGrath was found guilty on the charges of second degree assault and criminal mischief.  He was sentenced to three and a half years to seven years in prison on the assault conviction with suspended sentences on the criminal mischief convictions.

Draghi moved to withdraw from representing McGrath on November 1, 2012.  He cited Rule 1.7(a) of the New Hampshire Rules of Professional Conduct to support the motion.  The court granted the motion and appointed new counsel to represent McGrath.

On July 9, 2013, McGrath, while represented by counsel, filed a motion for a new trial.  He raised claims of ineffective assistance of counsel because trial counsel did not retain a medical expert to evaluate Freeman's injuries shown by red marks on her neck and failed to impeach Officer Cruz's testimony about McGrath's oral and physical confessions.  He also alleged that the state failed to provide him with favorable and exculpatory evidence, specifically, a police report about an incident at Freeman's work when an angry customer threw a tick at her that lodged in her neck.

The state court held a hearing on the motion for a new trial at which it heard testimony from Draghi, McGrath's former counsel, along with other evidence.  The court denied the motion

for a new trial and denied the subsequent motion for

reconsideration.  McGrath filed a notice of discretionary

appeal, which the New Hampshire Supreme Court declined to

accept.

McGrath, proceeding pro se, filed a petition for habeas

corpus relief under § 2254 in this court in August of 2014.  On

preliminary review, the magistrate judge identified the

following claims in McGrath's petition:

**1.**  McGrath's conviction was obtained in violation of his
Sixth Amendment right to the effective assistance of counsel at
trial, in that his defense counsel, Attorney Draghi:

a.  Failed to impeach EPD Officer Cruz regarding the
inconsistencies between his trial testimony and his police
report regarding his arrest of McGrath;

b.  Failed to consult with and produce a medical expert at
trial to testify regarding the red marks on Donna McGrath's
neck;

c.  Elected to forego a probable cause hearing, at a time
when McGrath was not prepared to contest the state's bail
recommendation;

d.  Failed to investigate inconsistencies between EPD
Officer Cruz's police reports relating to McGrath's arrest;

e.  Failed to investigate inconsistencies between EPD
Officer Cruz's police reports and Donna McGrath's witness
statement;

f.  Failed to interview Donna McGrath's Cumberland Farms
co-worker, the McGraths' neighbors, and witnesses who saw Donna
McGrath's tick bite;

g.  Failed to consult with and/or produce a psychiatrist to
provide expert testimony regarding Donna McGrath's demeanor;

h.  Failed to challenge the sufficiency of evidence
regarding the amount of property damage attributable to McGrath;

i.  Failed to investigate whether McGrath owned the
property that he was charged with destroying;

j.  Failed to explain to McGrath the significance of the
reduction of the criminal mischief charge from a felony to a
misdemeanor;

k.  Failed to object to hearsay statements; and

l.  Failed to pursue the defense approved by McGrath, which was that McGrath did not do any of the charged acts.

**2.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor did not produce to McGrath an exculpatory police report regarding a tick lodged in Donna McGrath's neck.

**3.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor (a) knowingly allowed EPD Officer Cruz to testify falsely at trial regarding the circumstances surrounding his arrest of McGrath, and (b) knowingly allowed Donna McGrath to testify falsely regarding McGrath grabbing her arm.

**4.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the evidence was insufficient to show that McGrath acted knowingly and purposefully, to establish guilt beyond a reasonable doubt.

**5.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor's opening statement prejudiced the jury by making McGrath out to be a monster, and included remarks about McGrath's conduct that were not supported by the evidence.

The magistrate judge informed McGrath that he had not shown that all of his claims had been exhausted.  McGrath was given time either to move to stay the petition while he exhausted all claims or to move to amend to forego the unexhausted claims. McGrath moved to stay and then filed a pleading in his state criminal case to exhaust the claims he raised here.

In its order dated December 23, 2014, the Merrimack County Superior Court stated that McGrath had "filed a pleading which appears to be another attempt to raise a claim of ineffective assistance of counsel.  He also seeks to have this Court recuse itself."  The motion was denied.  McGrath filed a motion to

7

amend on January 9, 2015, that does not appear to have been

addressed by the court.[3]   McGrath also appealed the court's

December 23, 2014, decision, and the New Hampshire Supreme Court

declined the notice on July 13, 2015.   The stay was lifted on

October 15, 2015.

On October 26, 2015, McGrath filed an addendum to his

petition, and the Warden did not object.   The magistrate judge

identified additional claims to support the petition as follows

(document no. 37):

**6.**   McGrath's conviction was obtained in violation of his
Sixth Amendment right to the effective assistance of counsel at
trial, in that his defense counsel, Attorney Draghi:
a.   Did not conduct any investigation of the charges
against McGrath, and did not hire an investigator;
b.   Did not come up with a trial strategy;
c.   Failed to interview property managers William and
Maureen Carone regarding Donna's tick bite;
d.   Failed to interview the Elks Club bartender regarding
McGrath's demeanor, for the purpose of developing evidence that
would demonstrate that McGrath did not act knowingly and
purposefully;
e.   Failed to interview Donna's Cumberland Farms co-workers
regarding Donna's appearance after the assault, for the purpose
of developing evidence that Donna's demeanor was not consistent
with having been assaulted;
f.   Failed to interview Donna's next door neighbor Shyla
Valley, regarding whether Valley told Donna that McGrath was
smashing glass in Donna's house;
g.   Failed to interview Donna's neighbor Dale, regarding
the broken glass on the ground the morning after the incident;
h.   Did not obtain the video of the EPD booking area at the
time of McGrath's booking, which would have been evidence that
McGrath had not acted knowingly and purposefully, as he had been

---

[3] The Warden mistakenly represents that the state court
addressed the motion to amend in the December 23 decision.
Because the motion to amend was filed on January 9, 2015, it was
not addressed in the court's prior order.

drinking, suffered memory loss, and had taken medications for chronic depression and bi-polar disorder;

i.  Did not consult with, or produce at trial, an expert, who would have testified as to noticeable changes between three pictures of Donna's neck, and as to whether there were hand or finger prints on Donna's neck in those three photos, taken on July 19 and July 20, 2011;

j.  Did not obtain the police report or medical records regarding an incident where a Cumberland Farms patron may have thrown a tick at Donna, which could have been used to show that marks on Donna's neck did not result from strangulation;

k.  Did not obtain Rent-a-Center records that would have shown that McGrath and not Donna owned the property he destroyed;

l.  Delivered an opening statement that, on p. 24 of the trial transcript, manifests his attorney misconduct, lack of professionalism, and lack of interest in representing McGrath;

m.  Did not cross-examine EPD Officer Cruz, or otherwise offer as evidence the bench warrant, the EPD dispatch report, and a Pembroke Police Department communication as evidence, to impeach Cruz's testimony that his intent, when he approached McGrath, was merely to talk with him, and not to arrest McGrath;

n.  Did not move to suppress or object in court to the admissibility of the "implied confession" of McGrath, who surrendered as soon as EPD Officer Cruz approached him, where there was evidence McGrath had been drinking and was on medication, and that the "implied confession" was not knowing and voluntary;

o.  Did not object to or cross examine either Donna or EPD Officer Cruz as to their testimony regarding their familiarity and relationship with one another, where Attorney Draghi was aware before trial that Donna had cooperated with the EPD on other matters;

p.  Did not cross examine Donna regarding the inconsistencies between her testimony and the photos taken by the state, regarding her broken property; and

q.  Did not move to withdraw from representing McGrath prior to trial, when he had a duty to do so, for violations of N.H. Rules of Professional Conduct.

**7.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor knowingly:

a.  Allowed EPD Officer Cruz to testify falsely as to his relationship with Donna by failing to disclose that she had been a confidential informant for the Epsom Police Department since 2007;

b.   Allowed Donna to testify falsely as to her relationship with EPD Officer Cruz by failing to disclose that she had been a confidential informant for the Epsom Police Department since 2007;

c.   Offered tampered photos of Donna's neck as evidence;

d.   Allowed Donna to testify falsely that marks on the back of Donna's neck were from McGrath's fingers; and

e.   Allowed Donna to testify falsely that McGrath had destroyed Donna's property.

**8.**   McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the state destroyed and/or did not turn over, before trial:

a.   The booking video that would have showed that McGrath's demeanor at the time of his arrest was inconsistent with knowing and purposeful acts;

b.   Photos that do not show hand prints on Donna's neck; and

c.   The EPD dispatch report that showed that Officer Cruz was in McGrath's driveway at the time McGrath was breaking things in McGrath's house, which could have been used to impeach EPD Officer Cruz's testimony regarding the circumstances of McGrath's arrest.

The Warden moved for summary judgment, and McGrath filed an objection.  The Warden did not reply to the objection.

## Discussion

The Warden moves for summary judgment on the grounds that McGrath's claims listed by the magistrate judge as Claims 1 through 5 have no merit and Claim 6.d was not exhausted and lacks merit.[4]  McGrath objects.  To the extent McGrath raises new

---

[4] In the motion for summary judgment, the Warden recites only five of the eight claims that were identified by the magistrate judge as supporting McGrath's petition.  Nevertheless, without specifically addressing the claim by number, the Warden also seeks summary judgment on Claim 6.d.

claims or issues in his objection, those matters are not properly part of his § 2254 petition in this case.

A prisoner in custody pursuant to a state court judgment is not entitled to relief unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). Factual determinations by the state court are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. If the state court did not adjudicate the claim on the merits, then no deference is due, and the claim is decided de novo. Jenkins v. Bergeron, --- F.3d ---, 2016 WL 3031089, at *3 (1st Cir. May 27, 2016).

The state court analyzed and decided the claims raised in McGrath's motion for a new trial. In response to the subsequent pro se motion filed on December 6, 2014, the state court summarily denied the motion without any detailed analysis of the claims. The state court did not address McGrath's motion to amend, filed on January 9, 2015.

The Warden acknowledges that the state court provided no analysis of many of McGrath's claims. Nevertheless, the Warden

argues that those claims, except two that the Warden contends were not exhausted, were adjudicated on the merits and that a modified deference standard used by the Sixth Circuit should apply.  See Veasquez v. Jones, 496 F.3d 564, 569-70 (6th Cir. 2007).

The court declines to apply the Sixth Circuit standard, which does not appear to conform to the First Circuit's interpretation of Supreme Court precedent.  See Jenkins v. Bergeron, --- F.3d ---, 2016 WL 3031089, at *3 (1st Cir. May 27, 2016).  Instead, the court will apply the deferential standard under § 2254(d) to those claims that the state court analyzed and the de novo standard to claims the state court did not expressly address.  See Jaynes v. Mitchell, --- F.3d ---, 2016 WL 3094316, at *5 (1st Cir. June 2, 2016) (de novo standard appropriate when § 2254 claims would fail even under that standard); see also § 2254(b)(2) (unexhausted claims may be denied on the merits).

A.  Due Process Claims[5]

McGrath contends that his conviction was obtained in violation of his right to due process because the prosecutor did

---

[5] Because McGrath's claims of ineffective assistance of counsel, Claim 1 with subparts a through l, repeat some of the issues raised in the due process claims, the due process claims, Claims 2 through 5, are addressed first.

not produce to the defense the police report about the tick incident, (Claim 2), the prosecutor allowed Cruz and Freeman to testify falsely at trial (Claim 3), the evidence was insufficient to establish his guilt beyond a reasonable doubt (Claim 4), and the prosecutor's opening statement was improper and prejudicial (Claim 5).  The Warden moves for summary judgment on the due process claims, Claims 2 through 5.

### 1.  Tick Incident Police Report

On May 9, 2011, more than two months before McGrath assaulted Freeman, an incident occurred while Freeman was working at Cumberland Farms.  According to the police report of the incident, Freeman stated that an angry customer threw a tick at her when she refused to allow him into the store, which was closed, and the tick lodged in the back of her neck.  The responding police officer found tweezers, and Freeman had someone else at the store remove the tick.

After his conviction, McGrath asked the Epsom Police Department for the police report of the tick incident.  The report was provided to him.  In support of his petition under § 2254, McGrath argues that the prosecutor violated McGrath's right to due process by failing to provide the police report before trial.

"'The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Wearry v. Cain, 136 S. Ct. 1002, 1006 (2016) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)).  To succeed on a § 2254 claim under Brady, a petitioner must show that the undisclosed evidence "is sufficient to undermine confidence in the verdict." Wearry, 136 S. Ct. at 1006.

McGrath raised the tick bite report in support of his motion for a new trial in state court.  The state court found that the tick bite report was not exculpatory because McGrath had not provided medical evidence that a tick bite so long before the assault would have helped his case and because the bite could not explain the red marks on both sides of Freeman's neck.[6]  In addition, the state court found that the evidence of

---

[6] To the extent McGrath attempts to argue that Freeman did not have red marks on both sides of her neck, he has not shown by clear and convincing evidence that the state court's factual finding was incorrect.  § 2254(e)(1).  McGrath also argues vaguely and without record support that the photographs showed a laceration on Freeman's neck that was self-inflicted.  It is unclear what claim McGrath's allegation was intended to support, but in the absence of evidence and a developed argument, it cannot be considered.  Similarly, McGrath's vague argument that the photographs of Freeman's neck, showing the red marks, should have been suppressed is raised for the first time in his objection to the motion for summary judgment and cannot be considered in support of his petition.

McGrath's guilt was so overwhelming that the tick bite report would not have affected the verdict.

McGrath does not argue and has not shown that the state court's decision was contrary to or involved an unreasonable application of Supreme Court precedent.  Therefore, Claim 2 provides no relief under § 2254.

### 2.  False Testimony

McGrath contends in Claim 3 that the prosecutor knowingly allowed Cruz and Freeman to testify falsely at trial.  Specifically, McGrath challenges Cruz's testimony about the circumstances of the arrest and his testimony about the sequence of events before he was arrested.  McGrath also suggests that Cruz had a motive to lie because he had a preexisting relationship with Freeman.  He challenges Freeman's testimony about the details of the assault.

Criminal defendants have the right to a fair trial, and prosecutorial misconduct by using false testimony violates that right.  Housen v. Gelb, 744 F.3d 221, 227 (1st Cir. 2014) (citing Napue v. Illinois, 360 U.S. 264, 272 (1959)).  The "knowing use of false testimony amounts to a due process violation and warrants a new trial only where such testimony was 'material,' i.e., where 'there is any reasonable likelihood that the false testimony could have affected the judgment of the

15

jury.'" Burgos v. Roden, 2015 WL 7428541, at *6 (D. Mass. Nov.
20, 2015) (quoting Giglio v. United States, 405 U.S. 150, 154
(1972)).

McGrath notes slight differences between Cruz's testimony
and his police report of the arrest.  He argues that he did not
provide a "physical confession" by offering himself for arrest.
The matters McGrath raises do not show that Cruz's testimony was
false and, therefore, do not show that the prosecutor used false
testimony.

Similarly, McGrath focuses on minor differences in
Freeman's statements about details of the assault and whether
she grabbed McGrath's arms or wrists, or slapped them away.  The
differences McGrath seizes upon are too inconsequential to show
that the prosecutor used false testimony.  There is no
likelihood that the differences in Freeman's statements or in
Cruz's testimony could have affected the judgment.

### 3.  Sufficiency of the Evidence

McGrath argues that the evidence was insufficient that he
acted knowingly and purposefully on the night of the assault.
He claims, apparently, that because he had been drinking and had
taken medication he was in a black out condition and does not
remember anything about the events that night.  The Warden

contends that the claim is waived and that the evidence of his
mental state was overwhelming.

The Warden's waiver argument is not well supported.
Therefore, the court considers the sufficiency of the evidence
of McGrath's mental state.

When a petitioner challenges the sufficiency of the
evidence to support his conviction, "the relevant question is
whether, after viewing the evidence in the light most favorable
to the prosecution, any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt."
Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The state court
held generally, in the order denying McGrath's motion for a new
trial, that the evidence was more than sufficient to support the
guilty verdict but did not specifically address the elements of
knowingly and purposely.

McGrath was convicted of second degree assault, in
violation of RSA 631:2, I(f), for knowingly strangling Freeman,
and convicted of misdemeanor criminal mischief for purposely
damaging household goods and throwing a framed picture at
Freeman's car.  Under New Hampshire law, "[a] person acts
purposely with respect to a material element of an offense when
his conscious object is to cause the result or engage in the
conduct that comprises the element."  RSA § 626:2, II(a).  "[A]
person acts knowingly with respect to conduct or to a

17

circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist."  RSA § 626:2, II(b).

The only evidence of McGrath drinking before the assault is that he asked Freeman to get him beer.[7]  During the assault, he was able to walk, talk, and respond to Freeman.  After the assault, McGrath called Freeman at work and apologized for his actions but threatened her that if she called the police he would break everything in the house and then turn himself in to the police.  When Cruz confronted McGrath at his home, McGrath did not appear to be intoxicated or otherwise impaired, and McGrath confessed to the assault.

Therefore, the evidence was sufficient to support the verdict.

### 4.   Prosecutor's Opening Statement

McGrath contends that the prosecutor's opening statement violated his right to due process because the prosecutor described McGrath as a monster and the remarks were not supported by evidence at trial.  To succeed on a claim challenging a prosecutor's opening statement, the petitioner must show that "the prosecutor's comments so infected the trial

---

[7] McGrath's new theory that he walked to the Elks Club, after taking medication, and drank there was not before the jury.

with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).  The state court did not address the issue of the prosecutor's opening statement.

In this case, the prosecutor likened McGrath's assault on Freeman to a nightmare.  While those remarks may have strayed beyond the usual purpose of an opening statement, the underlying facts about the ordeal were introduced into evidence.  In addition, the state court judge instructed the jury that the lawyers' statements were not evidence and that they should follow their own memory of the evidence.  Therefore, the prosecutor's opening statement did not violate McGrath's right to due process.

B.   Ineffective Assistance of Counsel

McGrath alleges a long list of claims that Draghi provided ineffective assistance of counsel.  Those claims are presented in Claim 1, subparts a-l, and Claim 6, subparts a-q.  The current motion for summary judgment challenges the ineffective assistance of counsel claims alleged in Claim 1, with its subparts, and Claim 6.d.

To show that counsel's representation was constitutionally ineffective, a petitioner must prove that counsel's performance was deficient and that the deficient performance prejudiced his

defense.  United States v. Dunfee, --- F.3d ---, 2016 WL
1732706, at *5 (1st Cir. May 2, 2016) (citing Strickland v.
Washington, 466 U.S. 668 (1984)).  To be deficient, for purposes
of an ineffective assistance claim, counsel's performance must
have been substandard and denied the petitioner effective
representation.  Jaynes, 2016 WL 3094316, at *6.  Prejudice
requires a showing that "but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Id. (internal quotation marks omitted).

     "When a federal court reviews an ineffective assistance of
counsel claim under § 2254, it must use a doubly deferential
standard of review that gives both the state court and the
defense attorney the benefit of the doubt."  Id.  Under
deferential review, the federal court must determine whether the
state court unreasonably applied the standard, not whether
counsel's performance fell below the standard.  Id.

     1.  Elks Bartender

     In Claim 6.d, McGrath charges that Draghi should have
interviewed the bartender at the Elks Club where McGrath says he
was drinking before he assaulted Freeman.  He contends that
because he took medication and was drinking he remembers nothing
about the evening.  He argues that the interview would have

produced evidence that that he did not act knowingly or purposely when he strangled Freeman.

The Warden challenges Claim 6.d as being unexhausted.  A claim cannot be raised in support of a petition under § 2254 unless it was exhausted in state court.  § 2254(b)(1)(A).  Exhaustion requires the petitioner to present "'his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'"  Jaynes, 2016 WL 3094316, at *2 (quoting Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014).  "[T]he legal theory articulated in the state and federal courts must be the same."  Sanchez, 753 F.3d at 294 (internal quotation marks omitted).

In his motion filed in state court on December 6, 2014, McGrath claimed that the conviction was obtained in violation of his due process rights because "the evidence was insufficient to show that McGrath acted knowingly purposefully [sic], to establish guilt beyond a reasonable doubt."  McGrath did not raise a question about interviewing the Elks bartender or argue that Draghi provided ineffective assistance because of a lack of evidence that he acted knowingly or purposely.

The ineffective assistance of counsel claim raised here, pertaining to interviewing the Elks bartender, does not appear to have been raised in state court.  Therefore, the claim was not exhausted and cannot be the basis for habeas relief.

21

In addition, the claim fails on the merits for the reasons provided in the Warden's memorandum in support of summary judgment.  § 2254(b)(2).

### 2.  Officer Cruz's Reports

McGrath alleges that Draghi provided ineffective assistance by failing to impeach Cruz with inconsistencies between his reports and his trial testimony about McGrath's arrest (Claim 1.a) and by failing to show inconsistencies in Cruz's reports about McGrath's arrest (Claim 1.d).[8]  Prior to McGrath's arrest, he confessed to the assault on Freeman.  Draghi testified that he did not cross examine Cruz about McGrath's confession to avoid emphasizing it and because Cruz had credibly explained other inconsistencies in his report and his testimony.

The state court found that Draghi's tactical decision not to inquire about McGrath's confession appropriately reduced its significance.  The court also found that because the evidence of McGrath's guilt was overwhelming, any error did not prejudice the defense.  McGrath has not shown that the state court's decision was contrary to or an unreasonable application of the Strickland standard.

---

[8] McGrath's arguments about Miranda rights and accusations that Cruz's testimony was perjury are meritless for the reasons provided in the Warden's memorandum.

### 3. Medical Expert on Red Marks

McGrath contends that Draghi provided ineffective assistance by failing to retain a medical expert to testify about the red marks on Freeman's neck shown in photographs taken by Cruz (Claim 1.b). The state court found, based on Draghi's testimony, that Draghi's strategic decision not to contest the red marks on Freeman's neck with expert opinion testimony was an appropriate tactical decision because such evidence would not have undermined the state's case and could have harmed the credibility of the defense. As such, the state court concluded that Draghi's decision not to challenge the cause of the red marks was not deficient representation and that the lack of expert opinion testimony did not prejudice the defense.

The state court properly applied Strickland standard for assessing constitutionally effective representation. Therefore, McGrath has not made the required showing under § 2254(d) to support relief.

### 4. Probable Cause Hearing

McGrath contends that Draghi provided ineffective assistance by waiving a probable cause hearing when McGrath was not then in a position to contest the state's bail

recommendation (Claim 1.c).[9]  If the claim were raised in state court, which does not appear to be the case, the state court did not expressly address it.

McGrath claims that Draghi advised him that the state had ample evidence of probable cause so that he should waive a probable cause hearing, which he did.  As a result, McGrath reasons, he proceeded into the bail hearing when he did not have his living arrangements planned.  He blames the amount of bail set by the court on his inability to present solid living arrangements.

McGrath does not explain how Draghi's advice could have affected the outcome of the criminal conviction.  See Condon v. Carlin, 2016 WL 2977243, at *3 (D. Idaho May 20, 2016) ("After conviction, a claim for past unlawful imprisonment or excessive bail is a civil rights claim . . ., not a habeas corpus claim that affects the fact or duration of Petitioner's present confinement.").  Therefore, even if Draghi's advice had been wrong, which is not apparent, McGrath has shown no prejudice.

---

[9] In his response to the Warden's motion for summary judgment, McGrath adds a theory that by not having a probable cause hearing the state and Freeman were allowed to change the story of what happened several times.  He also objects to Freeman's testimony at the bail hearing.  These issues were not approved by the magistrate judge and do not raise claims that can support the petition under § 2254.

See Olea v. Warden, 2015 WL 902841, at *4 (N.D. Cal. Mar. 2, 2015).

5.   Police Reports and Freeman's Statement

McGrath contends that Draghi's representation was deficient because he did not investigate the differences between Cruz's reports and Freeman's witness statement (Claim 1.e).  McGrath's claim focuses on Freeman's description of the strangulation incident, the timing of subsequent events, and who called the police.  The state court did not expressly address this claim.

 As detailed in the Warden's memorandum, the differences between Freeman's statement, her testimony, and the police reports are minor.  Under the circumstances, Draghi's failure to investigate the differences or pursue them further at trial is not deficient representation.  Importantly, additional focus on Freeman's statements would have underscored the evidence against McGrath.  Further, McGrath has not and cannot show that any additional focus on the differences would have resulted in a favorable outcome.

In his objection to the motion for summary judgment, McGrath also argues that Draghi should have objected to the prosecutor's leading questions to Freeman during her trial testimony.  He acknowledges, however, that when Draghi did object to a leading question, the court overruled the objection

25

in the interest of saving time.[10]  Therefore, McGrath has not
shown that more objections to leading questions would have
changed the outcome of the case.

### 6.  Interviewing Witnesses

In his response to the Warden's motion, McGrath contends
that Draghi should have interviewed Freeman's co-workers at
Cumberland Farms, the McGraths' neighbors, and other witnesses
in order to discover evidence about the tick bite on Freeman's
neck (Claim 1.f).  He also argues that if Draghi had interviewed
a neighbor, Shyla Valley, he could have challenged Freeman's
testimony about who smashed furniture and other belongings
inside the house on the night of the assault.  The state court
did not expressly address this claim.

In the context of the due process claim, the state court
found that McGrath knew about the tick bite and knew the police
were involved in the incident.  The court further found that

---

[10] McGrath charges that the judge improperly cared more about
his time spent in trial than McGrath's freedom.  In response to
McGrath's second state court filing, asserting ineffective
assistance of counsel, the judge found that to the extent that
filing was intended to be a motion for his recusal, the motion
"asserts nothing more than the Defendant's disagreement with
this Court's decisions in his case."  State v. McGrath, 2011-CR-
523, Dec. 23, 2014 (doc. no. 16).  McGrath has not shown that the
state court misapplied the governing law pertaining to bias and
recusal.  See, e.g., Moussa v. Warden, 2015 WL 1457541, at *12
(D.N.H. Mar. 30,2015); Plummer v. Cunningham, 2000 WL 33667090,
at *3 (D.N.H. Mar. 21, 2000).

Draghi credibly stated that McGrath never told him about the
tick bite incident.  Without that information, it is not
apparent that Draghi would have learned about the tick bite by
interviewing the suggested witnesses.  In addition, as the state
court found, evidence of the tick bite, which occurred more than
two months before the strangulation incident, would not have
helped the defense to counter the photographs that showed red
marks on both sides of Freeman's throat.

McGrath argues that Freeman falsely testified that she did
not know the neighbor, Shyla Valley.  He contends that Draghi
could have learned more about the details of the night of the
incident, including when things were smashed in the house, by
interviewing co-workers and neighbors.  McGrath raises no
material issues that Draghi could or should have explored with
witnesses.  His after-the-fact theories and quibbling with trial
testimony do not raise any matter that might have affected the
outcome of the criminal case.

Therefore, McGrath has not and cannot show that Draghi
provided deficient representation or that he suffered prejudice
for lack of additional witnesses.

### 7.  Expert Testimony About Freeman's Demeanor

McGrath contends that Draghi should have retained an expert
to provide testimony about Freeman's demeanor on the evening of

the incident (Claim 1.g).  He argues that Freeman's demeanor did
not show that she was upset by the incident because she smiled
when she was photographed by the police.  Although far from
clear, McGrath apparently believes that Freeman's demeanor was
inconsistent with someone who had just gone through the assault
that she described.

The state court did not expressly address the claim McGrath
raises.  Demeanor evidence may be admissible to address an issue
of fabrication.  State v. Sulloway, 166 N.H. 155, 162 (2014).
On the other hand, as the Warden points out, the court would not
likely have ordered a psychiatric evaluation of Freeman's
demeanor based on a smile in a photograph.

The defense had the photographs that McGrath says showed
Freeman smiling.  Therefore, evidence of her demeanor was
available.  McGrath makes no plausible argument that an expert,
such as a psychiatrist, would have testified that Freeman's
demeanor shown in the photographs undermined the credibility of
her report of the assault.  Further, in light of all of the
evidence, such expert testimony could not have changed the
outcome of the case.

    8.  Property Damage

McGrath contends that Draghi provided ineffective
assistance because he did not challenge the sufficiency of the

evidence of the value of the destroyed property and did not investigate whether McGrath, rather than Freeman, owned the property that was destroyed (Claims 1.h and 1.i).  The claims aim at his conviction on the misdemeanor criminal mischief charges of damaging household items and breaking Freeman's car windshield and the restitution he was ordered to pay to Freeman.

For purposes of his conviction on the misdemeanor charges under RSA 634:2, II-a, the state had to prove that McGrath, without the right to do so, purposely or recklessly damaged the property of another and caused or attempted to cause loss in excess of $100.  Freeman provided a list of damaged property and testified about the damage and the values. In his objection to summary judgment, McGrath lists certain values for damaged property and appears to argue that the values Freeman claimed are incorrect.  He contends that Freeman changed some of the items on the sheet and seems to suggest that Freeman falsified the evidence.

McGrath provides no evidence to support his accusations. The Warden explains in support of summary judgment that even with discounted amounts the value of the damaged property was more than $100.  The Warden also points out that the defense McGrath chose to pursue was that he had not damaged the property, not that the damaged property was worth less than was claimed.

To the extent McGrath is arguing that Draghi should have challenged the values of the damaged property for purposes of the restitution amount, he does not state a cognizable claim under § 2254.  Washington v. Smith, 564 F.3d 1350, 1351 (7th Cir. 2009); Clastul Feliz v. Tritt, 2016 WL 3538616, at *1, n.1 (E.D. Pa. June 29, 2016); Mercier v. Joyce, 2015 WL 733211, at *1, n.1 (D. Me. Feb. 20, 2015); United States v. Robertson, 2016 WL 193389, at *4 (N.D. Ill. Jan. 15, 2016).

Therefore, McGrath has not shown that Draghi provided ineffective assistance by failing to challenge the amounts claimed for damaged property.  In addition, even if challenged, McGrath has not shown that the value would be less than $100.

McGrath asserts that Draghi was ineffective for failing to show that Freeman did not own the damaged property (Claim 1.i). In support of summary judgment, the Warden contends that McGrath's defense, as he requested it to be, was that he did not damage the property, not that Freeman did not own the property. For that reason, McGrath's new argument that he destroyed his own property would not have contradicted his chosen defense. McGrath does not appear to pursue this claim in opposition to summary judgment.  Therefore, McGrath has not shown ineffective assistance of counsel in Claim 1.i.

### 9.  Criminal Mischief Charge

McGrath claims that Draghi was ineffective in explaining to him the significance of changing the felony criminal mischief charge to a misdemeanor (Claim 1.j).  The claim was unclear when presented to the state court, and the state court did not address it.

In his objection to summary judgment, McGrath seems to confuse the claim with his challenge to the value of the property damaged.  He states that he "was aware of why the Felony was dropped to a misdemeanor because it was [McGrath] who told Counsel that he was being charged twice for a windshield but [McGrath] also pointed to cousel [sic] that other things on victims [sic] inventory sheet were in pictures unbroken and he never brought it to anyones [sic] attention other than [the prosecutor."  He characterizes the issue as "theft by deception."

McGrath raises no cognizable claim based on the reduction in the criminal mischief charge.

### 10.  Hearsay

The Warden objects to Claim 1.k on the ground that it was not exhausted.  In response, McGrath says that the state court "judge denied everything that came across his bench in regards to State v. McGrath" but does not show that the claim was raised

in state court.  Therefore, McGrath has not shown that the claim
was exhausted.

Further, if the claim were considered on the merits,
hearsay is a constitutional issue only when the challenged
testimony violates the Confrontation Clause of the Sixth
Amendment.  See Linton v. Saba, 812 F.3d 112, 125 (1st Cir.
2016).  Because McGrath fails to identify any testimonial
statements that violated the Confrontation Clause, he has not
provided a basis for evaluating ineffective assistance based on
Draghi's alleged failure to object.  In addition, he has not
shown the necessary prejudice even if such omissions occurred.

11.  Defense

The claim allowed on preliminary review is that Draghi
failed to pursue the defense chosen by McGrath, which was that
he did not assault Freeman or cause the damage to the household
furnishings and Freeman's car (Claim 1.l).  This claim was not
addressed by the state court.

In his objection to summary judgment, McGrath acknowledges
that the defense he wanted to use was that he did not commit the
offenses charged.  He does not argue that Draghi pursued a
different theory that was contrary to his requested defense.
Instead, McGrath presents the claim as a compilation of his
other complaints about Draghi's representation.  As such, this

32

is not a separate claim in support of the § 2254 petition and provides no independent basis for relief.

None of the claims presented in Claim 1 provide a viable basis for relief under § 2254.

Conclusion

For the foregoing reasons, the Warden's motion for summary judgment (document no. 47) is granted.  Claims 1, 2, 3, 4, 5, and 6.d are dismissed.  The claims remaining in support of the § 2254 petition are Claims 6.a-c, 6.e-q, 7, and 8.

The Warden shall file a motion for summary judgment on the remaining claims on or before **August 19, 2016,** or file an amended answer that responds to the remaining claims and a notice that a hearing will be required on the remaining claims.

SO ORDERED.


Joseph DiClerico, Jr.
United States District Judge


July 19, 2016

cc:  Paul J. McGrath, pro se
     Elizabeth C. Woodcock, Esq.