UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Paul J. McGrath</u>

    v.                            Civil No. 14-cv-353-JD
                                   Opinion No. 2016 DNH 208
<u>Warden, New Hampshire State Prison</u>

O R D E R

    Paul J. McGrath, proceeding pro se, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court on charges of second degree assault and criminal mischief.  The court previously granted summary judgment in favor of the Warden on the claims raised in McGrath's original petition.  The Warden then moved for summary judgment on the claims that McGrath raised in an addendum to the petition.

    McGrath filed an objection to the motion but also requested and was granted an extension of time to allow him to file an "expert medical summary on pictures of original pictures and photo tech summary."  McGrath has now filed the additional exhibits, and the Warden has responded.  McGrath was allowed time to file a surreply but did not do so.

Standard of Review

    A motion for summary judgment under Federal Rule of Civil Procedure 56 may be considered in a § 2254 proceeding.  <u>See</u>

Perri v. Gerry, 2014 WL 2218679, at *1 (D.N.H. May 29, 2014).
In doing so, the court applies the standard under Rule 56 with
the restrictions imposed under § 2254.   Bonney v. Wilson, 817
F.3d 711-12 (10th Cir. 2016).

Summary judgment is appropriate when the moving party
"shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).   "A genuine dispute is one that a
reasonable fact-finder could resolve in favor of either party
and a material fact is one that could affect the outcome of the
case."   Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir.
2015).   Reasonable inferences are taken in the light most
favorable to the nonmoving party, but unsupported speculation
and evidence that "is less than significantly probative" are not
sufficient to avoid summary judgment.   Planadeball v. Wyndham
Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015)
(internal quotation marks omitted).

Under the habeas corpus standard, a prisoner in custody
pursuant to a state court judgment is not entitled to relief
unless the adjudication of the claim "resulted in a decision
that was contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the
Supreme Court of the United States" or "resulted in a decision
that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."
§ 2254(d).  Factual determinations by the state court are
presumed to be correct, and the petitioner bears the burden of
rebutting that presumption by clear and convincing evidence.  If
the state court did not adjudicate the claim on the merits, then
no deference is due, and the claim is decided de novo.  Jenkins
v. Bergeron, 824 F.3d 148, 152 (1st Cir. 2016).

## Background[1]

The charges of second degree assault and criminal
mischief against McGrath that resulted in his conviction and
sentence arose from an incident between McGrath and his former
wife, Donna (now Donna Freeman), on July 19, 2011, at their home
in Epsom, New Hampshire.[2]  They began arguing earlier in the day
about Freeman's children from a prior marriage.

That evening, after more verbal exchanges, McGrath
approached Freeman and made a fist.  She acted defensively to
prevent a punch.  McGrath then grabbed Freeman around the throat
with both hands and squeezed so hard that Freeman had trouble
breathing.

---

[1] The background facts are taken from the court's prior order
that granted summary judgment in favor of the Warden on the
claims in McGrath's original habeas petition.

[2] Paul and Donna are now divorced, and Donna's name is now
Donna Freeman.  The court will refer to Paul McGrath as
"McGrath" and to Donna Freeman as "Freeman."

After Freeman kicked McGrath, he released her.  Freeman went out to her car, ostensibly to retrieve a house key, and locked the car doors.  McGrath got their framed wedding photograph and threw it at the car windshield, which cracked the windshield.  Freeman started the car and drove to her night shift job at Cumberland Farms.

Freeman felt safe at work because McGrath would not walk that far.  When she got to work, Freeman called the Epsom police.  Officer Ferdinand Cruz responded.

Cruz saw that Freeman had red marks on her neck and was upset.  Freeman told him what had happened with McGrath.  While Cruz was talking to Freeman, McGrath called and told her he was sorry.  He asked if she had called the police and threatened to damage things in the house.  Freeman said that she had called the police.  McGrath called back and told her that he was destroying the house.

Cruz photographed the red marks on Freeman's neck and her car's broken windshield.  He then went to McGrath's house but found no one there.  After Cruz left, the police dispatcher called Cruz to report that a neighbor had called Freeman because McGrath was breaking furniture and windows at their home.  Cruz went back to the house but did not find McGrath.  Cruz asked for backup, but the two officers who responded also did not find McGrath.

4

When Cruz returned to the house at 2:00 a.m., he saw a light on inside.  McGrath came outside with a drink in his hand, but did not show obvious signs of intoxication.  Cruz asked McGrath what had happened.  McGrath answered that he had argued with Freeman and she grabbed his arm.  McGrath said that he put his arm around her neck and choked her, and then Freeman kicked him and walked out of the house.  McGrath presented himself for arrest with his hands behind his back.  Cruz told him that he was under arrest and took him to the police station.

Cruz returned to Cumberland Farms to tell Freeman that McGrath was in jail.  When Freeman got home after work, she found glass in the front yard.  Inside the house, she found broken chairs, other damaged furniture, and smashed glasses and dishes.  Later, Freeman discovered that her son's mattress had been stabbed.  Cruz went back to the house to take photographs of the damage.

Freeman applied for and was granted a restraining order against McGrath.  McGrath did not contest the grounds for the restraining order.

McGrath was charged with one count of second degree assault by strangulation, one count of simple assault, and two counts of criminal mischief.  He was represented by appointed counsel, John M. Draghi.  The state terminated the simple assault charge by nolle prosequi.  The case was tried during May of 2012.

McGrath was found guilty on the charges of second degree assault and criminal mischief.  He was sentenced to three and a half years to seven years in prison on the assault conviction with suspended sentences on the criminal mischief convictions.

Draghi moved to withdraw from representing McGrath on November 1, 2012.  He cited Rule 1.7(a) of the New Hampshire Rules of Professional Conduct to support the motion.  The court granted the motion and appointed new counsel to represent McGrath.

On July 9, 2013, McGrath, while represented by counsel, filed a motion for a new trial.  He raised claims of ineffective assistance of counsel because trial counsel did not retain a medical expert to evaluate Freeman's injuries shown by red marks on her neck and failed to impeach Officer Cruz's testimony about McGrath's oral and physical confessions.  He also alleged that the state failed to provide him with favorable and exculpatory evidence, specifically, a police report about an incident at Freeman's work when an angry customer threw a tick at her that lodged in her neck.

The state court held a hearing on the motion for a new trial at which it heard testimony from Draghi, McGrath's former counsel, along with other evidence.  The court denied the motion for a new trial and denied the subsequent motion for reconsideration.  In denying the motion for a new trial, the

6

court found that "[t]he evidence against [McGrath] was overwhelming."  Order on Motion for a New Trial, doc. no. 8-8 McGrath filed a notice of discretionary appeal, which the New Hampshire Supreme Court declined to accept.

McGrath, proceeding pro se, filed a petition for habeas corpus relief under § 2254 in this court in August of 2014.  On preliminary review, the magistrate judge identified the following claims in McGrath's petition:

> **1.** McGrath's conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel at trial, in that his defense counsel, Attorney Draghi:
> a.  Failed to impeach EPD Officer Cruz regarding the inconsistencies between his trial testimony and his police report regarding his arrest of McGrath;
> b.  Failed to consult with and produce a medical expert at trial to testify regarding the red marks on Donna McGrath's neck;
> c.  Elected to forego a probable cause hearing, at a time when McGrath was not prepared to contest the state's bail recommendation;
> d.  Failed to investigate inconsistencies between EPD Officer Cruz's police reports relating to McGrath's arrest;
> e.  Failed to investigate inconsistencies between EPD Officer Cruz's police reports and Donna McGrath's witness statement;
> f.  Failed to interview Donna McGrath's Cumberland Farms co-worker, the McGraths' neighbors, and witnesses who saw Donna McGrath's tick bite;
> g.  Failed to consult with and/or produce a psychiatrist to provide expert testimony regarding Donna McGrath's demeanor;
> h.  Failed to challenge the sufficiency of evidence regarding the amount of property damage attributable to McGrath;
> i.  Failed to investigate whether McGrath owned the property that he was charged with destroying;

7

    j.  Failed to explain to McGrath the significance of the reduction of the criminal mischief charge from a felony to a misdemeanor;

    k.  Failed to object to hearsay statements; and

    l.  Failed to pursue the defense approved by McGrath, which was that McGrath did not do any of the charged acts.

    **2.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor did not produce to McGrath an exculpatory police report regarding a tick lodged in Donna McGrath's neck.

    **3.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor (a) knowingly allowed EPD Officer Cruz to testify falsely at trial regarding the circumstances surrounding his arrest of McGrath, and (b) knowingly allowed Donna McGrath to testify falsely regarding McGrath grabbing her arm.

    **4.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the evidence was insufficient to show that McGrath acted knowingly and purposefully, to establish guilt beyond a reasonable doubt.

    **5.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor's opening statement prejudiced the jury by making McGrath out to be a monster, and included remarks about McGrath's conduct that were not supported by the evidence.

The magistrate judge informed McGrath that he had not shown that all of his claims had been exhausted.  McGrath was given time either to move to stay the petition while he exhausted all claims or to move to amend to forego the unexhausted claims. McGrath moved to stay and then filed a pleading in his state criminal case to exhaust the claims he raised here.

In its order dated December 23, 2014, the Merrimack County Superior Court stated that McGrath had "filed a pleading which appears to be another attempt to raise a claim of ineffective assistance of counsel.  He also seeks to have this Court recuse itself."  The motion was denied.  McGrath filed a motion to amend on January 9, 2015, that does not appear to have been addressed by the court.[3]  On January 18, 2015, McGrath appealed the court's December 23, 2014, decision, and the New Hampshire Supreme Court declined the appeal on July 13, 2015.  The stay was lifted on October 15, 2015.

The magistrate judge identified additional claims to support the petition as follows (document no. 37):[4]

> **6.**  McGrath's conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel at trial, in that his defense counsel, Attorney Draghi:
> a.  Did not conduct any investigation of the charges against McGrath, and did not hire an investigator;
> b.  Did not come up with a trial strategy;
> c.  Failed to interview property managers William and Maureen Carone regarding Donna's tick bite;
> d.  Failed to interview the Elks Club bartender regarding McGrath's demeanor, for the purpose of

---

[3] The Warden mistakenly represents that the state court addressed the motion to amend in the December 23 decision. Because the motion to amend was filed on January 9, 2015, it was not addressed in the court's prior order.

[4] To the extent the Warden disagrees with the wording of the claims, that issue could have been raised in response to the order (document no. 37) and the report and recommendation (document no. 38) but was not.  The report and recommendation was approved on February 26, 2016, (document no. 39).

developing evidence that would demonstrate that
McGrath did not act knowingly and purposefully;

     e.   Failed to interview Donna's Cumberland Farms
co-workers regarding Donna's appearance after the
assault, for the purpose of developing evidence that
Donna's demeanor was not consistent with having been
assaulted;

     f.   Failed to interview Donna's next door
neighbor Shyla Valley, regarding whether Valley told
Donna that McGrath was smashing glass in Donna's
house;

     g.   Failed to interview Donna's neighbor Dale,
regarding the broken glass on the ground the morning
after the incident;

     h.   Did not obtain the video of the EPD booking
area at the time of McGrath's booking, which would
have been evidence that McGrath had not acted
knowingly and purposefully, as he had been drinking,
suffered memory loss, and had taken medications for
chronic depression and bi-polar disorder;

     i.   Did not consult with, or produce at trial, an
expert, who would have testified as to noticeable
changes between three pictures of Donna's neck, and as
to whether there were hand or finger prints on Donna's
neck in those three photos, taken on July 19 and July
20, 2011;

     j.   Did not obtain the police report or medical
records regarding an incident where a Cumberland Farms
patron may have thrown a tick at Donna, which could
have been used to show that marks on Donna's neck did
not result from strangulation;

     k.   Did not obtain Rent-a-Center records that
would have shown that McGrath and not Donna owned the
property he destroyed;

     l.   Delivered an opening statement that, on p. 24
of the trial transcript, manifests his attorney
misconduct, lack of professionalism, and lack of
interest in representing McGrath;

     m.   Did not cross-examine EPD Officer Cruz, or
otherwise offer as evidence the bench warrant, the EPD
dispatch report, and a Pembroke Police Department
communication as evidence, to impeach Cruz's testimony
that his intent, when he approached McGrath, was
merely to talk with him, and not to arrest McGrath;

     n.   Did not move to suppress or object in court
to the admissibility of the "implied confession" of
McGrath, who surrendered as soon as EPD Officer Cruz

approached him, where there was evidence McGrath had been drinking and was on medication, and that the "implied confession" was not knowing and voluntary;

    o.  Did not object to or cross examine either Donna or EPD Officer Cruz as to their testimony regarding their familiarity and relationship with one another, where Attorney Draghi was aware before trial that Donna had cooperated with the EPD on other matters;

    p.  Did not cross examine Donna regarding the inconsistencies between her testimony and the photos taken by the state, regarding her broken property; and

    q.  Did not move to withdraw from representing McGrath prior to trial, when he had a duty to do so, for violations of N.H. Rules of Professional Conduct.

    **7.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the prosecutor knowingly:

    a.  Allowed EPD Officer Cruz to testify falsely as to his relationship with Donna by failing to disclose that she had been a confidential informant for the Epsom Police Department since 2007;

    b.  Allowed Donna to testify falsely as to her relationship with EPD Officer Cruz by failing to disclose that she had been a confidential informant for the Epsom Police Department since 2007;

    c.  Offered tampered photos of Donna's neck as evidence;

    d.  Allowed Donna to testify falsely that marks on the back of Donna's neck were from McGrath's fingers; and

    e.  Allowed Donna to testify falsely that McGrath had destroyed Donna's property.

    **8.**  McGrath's conviction was obtained in violation of his Fourteenth Amendment right to due process, in that the state destroyed and/or did not turn over, before trial:

    a.  The booking video that would have showed that McGrath's demeanor at the time of his arrest was inconsistent with knowing and purposeful acts;

    b.  Photos that do not show hand prints on Donna's neck; and

    c.  The EPD dispatch report that showed that Officer Cruz was in McGrath's driveway at the time McGrath was breaking things in McGrath's house, which

could have been used to impeach EPD Officer Cruz's testimony regarding the circumstances of McGrath's arrest.

The court previously granted the Warden's motion for summary judgment on Claims 1 through 5 and 6(d).

## Discussion

The Warden now moves for summary judgment on the remaining claims that were presented in the addendum to the petition, Claims 6 through 8.  Claim 6 alleges that McGrath's counsel, John Draghi, provided ineffective assistance and lists seventeen grounds to support the claim.[5]  Claim 7 alleges that the prosecutor violated McGrath's Fourteenth Amendment due process rights by allowing false testimony and tampered evidence to be presented at trial.  Claim 8 alleges that the state violated his Fourteenth Amendment due process rights by destroying or failing to turn over evidence.

The court will first address the issue of the new evidence that McGrath submitted in support of his habeas petition.  His due process claims will be considered before the ineffective assistance of counsel claims because of the duplication of issues and to avoid unnecessarily repetitive analysis.

---

[5] As noted above, Claim 6(d) has been decided in favor of the Warden.

A.   <u>New Evidence</u>

McGrath has submitted new evidence about the photographs of injuries to Freeman's neck.  The new evidence consists of a letter from Thomas A Andrew, M.D., the Chief Medical Examiner for the State of New Hampshire, about two photographs, showing marks on a woman's neck and McGrath's comments about the photographs.  Dr. Thomas states that the two photographs are different in size and exposure but show the same injuries.  He also states: "While their location on the body is consistent with pressure applied to the neck, I would not be able to testify that they represent hand marks to the exclusion of any other explanation."

The Warden objects to the new evidence because it was not presented to the state court.  The Warden also contends that the new evidence does not support McGrath's claims but instead confirms trial counsel's evaluation of the evidence and his trial strategy.

McGrath claimed in his original petition that Draghi was ineffective because he failed to consult with and produce a medical expert for trial to testify regarding the red marks on Freeman's neck.  As is explained in the previous summary judgment order, the state court adjudicated that claim and concluded that Draghi's strategic decision not to contest the photographs of red marks on Freeman's neck was appropriate in

light of the state's case and the potential for harm to the
credibility of the defense.  Because the state court properly
applied the standard for evaluating ineffective assistance of
counsel, summary judgment was granted in favor of the Warden on
that claim.

In the addendum claims, McGrath again alleges that Draghi
was ineffective for failing to produce an expert to testify
about the photographs of Freeman's neck.  He alleges that an
expert would have testified to noticeable changes in the
photographs and to whether the photographs showed hand prints.
Presumably, McGrath offers the new evidence to support that
claim.[6]

The ineffective assistance of counsel claim based on a
failure to consult an expert about the photographs was already
decided in favor of the Warden.  In addition, "review under
§ 2254(d)(1) is limited to the record that was before the state
court that adjudicated the claim on the merits." Cullen v.
Pinholster, 563 U.S. 170, 181 (2011).  Because McGrath did not

---

[6] To the extent that McGrath argues new claims or theories
related to the photographs in his memorandum that accompanies
the new evidence, those cannot be considered in support of his
petition.  He has not moved to amend the petition, and it is too
late to do so now.  In addition, he has not shown that his new
claims or theories were exhausted in state court, and the state
court decisions submitted to the court show that they were not
exhausted.

provide Dr. Thomas's letter to the state court, he cannot submit that evidence here.

Further, even if the new evidence were properly before the court, it would not support McGrath's claim.  Dr. Thomas's letter says that the photographs <u>do</u> show the same injuries and that the marks are consistent with "pressure applied to the neck," as in strangulation.  As a result, the opinion supports and strengthens Draghi's strategic decision not to pursue expert testimony about the photographs.  Therefore, the new evidence does not support McGrath's claims.

B.   <u>Due Process – Prosecutorial Misconduct – Claim 7</u>

McGrath alleges that the prosecutor violated his due process rights by allowing Cruz and Freeman to testify falsely. He contends that their testimony was false because they did not fully explain their preexisting relationship, which included Freeman's role as an informant to the Epsom Police Department.[7] He also asserts that Freeman testified falsely that McGrath caused the red marks on the back of her neck and that McGrath had destroyed her property.  In addition, McGrath alleges that the prosecutor introduced tampered photographs of Freeman's neck.  The Warden moves for summary judgment on the grounds that

---

[7] An issue about the relationship between Freeman and Cruz was also raised in Claim 3 that was decided in favor of the Warden.

no false testimony was presented at trial, no tampered evidence was presented, and the assault charge against McGrath based on Freeman's injuries was supported by McGrath's confession.

It does not appear that McGrath raised Claim 7 in his 2013 motion for a new trial in state court or in his second state court filing, which was denied on December 23, 2014.  Some of the issues may have been raised for the first time in his notice of appeal to the New Hampshire Supreme Court that is dated January 18, 2015, which was declined.  Based on that record, McGrath has not shown that the claims were exhausted. Unexhausted claims cannot be considered for purposes of habeas relief.  See § 2254(b); Jaynes v. Mitchell, 824 F.3d 187, 192 (1st Cir. 2016).  Even if the claims had been exhausted, however, they would fail based on de novo review.

A conviction obtained through the deliberate use of false evidence or the failure to correct evidence that is known to be false violates due process under the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959).  The knowing use of false testimony to obtain a conviction also violates due process.  Housen v. Gelb, 744 F.3d 221, 227 (1st Cir. 2014).  In order for a conviction to be obtained by false evidence or testimony so that a new trial is warranted, however, the evidence must be material to the outcome under the standard of "'any reasonable likelihood that the false testimony could have

16

affected the judgment of the jury.'" Burgos v. Roden, 2015 WL 7428541, at *6 (D. Mass. Nov. 20, 2015) (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)).

As the Warden explains, McGrath has not shown that any false testimony or false evidence was presented to the jury in his case.  Cruz and Freeman testified truthfully about their preexisting relationship.  Freeman's tip to the police about someone who was later arrested on other charges never came up at trial so no false testimony was given.[8]  In addition, testimony about Freeman's assistance to the police, which occurred years before the incident with McGrath, could not have changed the outcome of the case against McGrath, particularly in light of the overwhelming evidence against McGrath.

McGrath has not shown that Freeman testified falsely about the marks on her neck.  Indeed, McGrath apologized for strangling Freeman and told Cruz he had choked her.

It is not clear what issue McGrath intends to raise as to Freeman's testimony about the destruction of property.  To the extent McGrath is challenging, again, Freeman's testimony about what was broken and the value of the broken property, that issue was addressed in the previous summary judgment order in the context of ineffective assistance of counsel.  Raising the same

---

[8] McGrath knew about Freeman's tip to the police.

issue as a due process claim does not change the outcome.[9]
Otherwise, McGrath has not shown what testimony was false or how
it might have been material to his conviction.

Therefore, the Warden is entitled to summary judgment on
Claim 7.

C.   Due Process – Brady Violations- Claim 8

McGrath alleges that his conviction was obtained in
violation of due process because the state destroyed or did not
turn over to the defense a booking video that would have shown
his demeanor at the time he was arrested, photographs that do
not show hand prints on Freeman's neck, and a police dispatch
report that shows Cruz was in the driveway when McGrath was
breaking things in the house.  The Warden responds that McGrath
does not appear to have raised the photograph claim in state
court and that the other two issues lack merit.

"Under Brady, a defendant's right to due process is
violated when the prosecution suppresses evidence that is both
favorable to the accused and material either to guilt or
innocence." DeCologero v. United States, 802 F.3d 155, 161 (1st
Cir. 2015) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963))
(internal quotation marks omitted).  Evidence is material "when

_____

[9] The issue of Freeman's testimony about the property
destroyed was raised in Claim 1, parts (h) and (i).  Claim 1 was
decided in favor of the Warden.

there is any reasonable likelihood it could have affected the
judgment of the jury." Wearry v. Cain, 136 S. Ct. 1002, 1006
(2016).

    1.  Booking Video

McGrath asserts that the state had a video, showing him
being booked at the Epsom Police Department, that was not
provided to the defense.  He argues that the video would have
shown that he could not have acted knowingly or purposefully
when he assaulted Freeman, threw the framed picture at the car
windshield, and broke things in the house because he had been
drinking and had taken medication.  He further argues that the
video would have contradicted Freeman's testimony about his
condition when he strangled her and Cruz's testimony that
McGrath was not impaired when he was arrested.  McGrath raised
the claim about the booking video in his second appeal to the
New Hampshire Supreme Court, which was declined.

McGrath has not shown that a booking video existed or what
it would show.  Because McGrath contends that he has no memory
of the evening when the incident occurred, he cannot remember
the booking or what his demeanor might have been at that time.
Therefore, McGrath has not shown that the video, if it existed,
would have been favorable to him.  Therefore, McGrath has not

shown that the state withheld favorable evidence or that the booking video could have affected the outcome in his case.

### 2.   Photographs

McGrath contends that the state withheld photographs that do not show hand prints on Freeman's neck.  He did not raise that claim in state court.  Because the photograph claim was not exhausted, it cannot be considered in support of McGrath's § 2254 petition.

Even if it were considered, McGrath provides no proof that the state had photographs that did not show prints on Freeman's neck.  Without some evidence that the state had material photographs that were withheld, McGrath cannot prove the claim. Further, given the other evidence against McGrath, including his confession, any such photographs would not have changed the outcome of the case.

### 3.   Police Dispatch Report

McGrath contends that the state withheld the Epsom police dispatch report that would have shown that Cruz was parked in the McGraths' driveway at the same time that Freeman got a call at work about McGrath breaking things in the house.  He contends that the dispatch report could have been used to impeach Cruz's testimony that the house was quiet when he arrived.  The

dispatch report is in the record, however, and McGrath has not shown that it was withheld from the defense.

McGrath also has not shown that the dispatch report contradicts Cruz's testimony that the house was quiet when he arrived.  Even if McGrath could show, which he has not done, that the dispatch report indicated Cruz was at the house when the neighbor called Freeman at work about McGrath breaking things, that would not have changed the outcome in his case.  Therefore, McGrath has not shown a due process violation.

D.   <u>Ineffective Assistance of Counsel</u>

McGrath alleges seventeen claims of ineffective assistance of counsel in Claim 6.  Claim 6(d) has already been decided in favor of the Warden.  To succeed on a claim of ineffective assistance of counsel under § 2254, a petitioner must show "that 'counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" Woods v. Donald, 135 S. Ct. 1372, 1375 (2015) (quoting Stickland v. Washington, 466 U.S. 668, 687 (1984)).  A court considering the claim "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Woods, 135 S. Ct. at 1375 (quoting Strickland, 466 U.S. at 689).

### 1.  Lack of Investigation and Trial Strategy

McGrath charges generally in Claim 6, parts (a) and (b), that Draghi provided ineffective assistance by failing to investigate the charges against him, including failing to hire an investigator, and failing to develop a trial strategy.  He then provides the specific failings he attributes to the lack of an investigation and trial strategy in Claim 1, parts (c) through (k).

With respect to trial strategy, Draghi's affidavit submitted for purposes of the state court proceeding on McGrath's motion for a new trial, shows that Draghi did have a trial strategy that McGrath approved.  Draghi states that McGrath suggested a theory that Freeman and Cruz conspired to lie about him to get him arrested so that Freeman could have their home without rent and to help her in the divorce.  Draghi said he would not recommend that strategy and suggested instead that they hold the state to its burden to prove the charges.

Draghi also said he told McGrath that he would pursue the strategy McGrath sought.  After Draghi explained the charges and the cross examination process to address the charges, McGrath chose a strategy based on a theory that Freeman, acting alone or with someone else, caused the red marks on her neck herself and damaged the property in the home.

In his discretionary appeal to the New Hampshire Supreme Court dated March 13, 2015, McGrath confirmed the trial strategy he had chosen to pursue at trial.  McGrath listed as item J in support of his claim of ineffective assistance of counsel: "Failed to pursue the defense approved by McGrath, which was that McGrath did not do it or did not do any of the charged acts."  Therefore, McGrath's claim is that Draghi was ineffective in the manner in which he presented the defense, not that he lacked a strategy.  Those issues are raised in Claim 6, parts (l) through (q).

    2.  <u>Tick Bite</u>

McGrath alleges in Claim 6, parts (c) and (j), that Draghi was ineffective in failing to pursue evidence about Freeman's tick bite.  As is discussed in the previous summary judgment order, however, McGrath knew about the tick bite at the time of trial but did not tell Draghi about it.  In addition, the state court found that evidence of the tick bite, which occurred more than two months before the assault, would not have helped the defense in light of the photographs showing red marks on both sides of Freeman's neck.  Therefore, McGrath has not shown that Draghi provided ineffective assistance based on a lack of tick bite evidence or that a failure to present the evidence prejudiced his defense.

3.   <u>Demeanor</u>

In Claim 6(e), McGrath charges that Draghi was ineffective because he did not interview Freeman's co-workers at Cumberland Farms about her demeanor after the assault.  McGrath contends the co-workers would have provided information that Freeman's demeanor was not consistent with someone who had been assaulted.

McGrath raised the issue of Freeman's demeanor in Claim 1(g), arguing that Draghi should have retained an expert to provide testimony about Freeman's demeanor based on the photographs that showed her smiling.  The court noted that the state court did not address the claim and concluded that McGrath had not provided a plausible theory that an expert would have provided helpful testimony based on Freeman's photograph, particularly in light of all the evidence against McGrath.

McGrath has not shown that Freeman's co-workers would have provided evidence that Freeman's demeanor was inconsistent with someone who had been assaulted or that any such testimony would have helped his case.  Therefore, even if McGrath could show that Draghi should have interviewed Freeman's co-workers, he cannot show that the lack of their testimony was prejudicial.

4.  <u>Property Damage</u>

McGrath alleges in Claim 6, parts (f), (g), (k), and (p), that Draghi should have interviewed witnesses about the property damage at the house, should have obtained Rent-A-Center records about the rented property, and should have cross-examined Freeman about discrepancies between her testimony and other evidence about damaged property.  To the extent McGrath's claim is that Draghi should have challenged the ownership and amount or type of property damage, those issues were addressed and resolved against him in the previous summary judgment order.

McGrath's claims that Draghi should have interviewed neighbors about the property damage are unclear.  McGrath appears to again argue that Draghi could have challenged Freeman's testimony that she did not know Shyla Valley if he had interviewed Valley, which would have undermined Freeman's credibility.[10]  The same issue was raised and resolved in favor of the Warden in the previous summary judgment order.

McGrath also contends that Draghi should have interviewed the neighbor identified as "Dale" about the incident.  Freeman testified that after she got home from work she helped Dale pick up glass that was in his front yard.  McGrath does not explain

---

[10] Freeman did not testify that she did not know the neighbor, she avoided giving the neighbor's name and said that they were not close.

what benefit Dale's version of the events would have provided but appears to suggest that Freeman did not help pick up glass in Dale's yard.  Even if Freeman did not help pick up glass, impeaching Freeman on that small detail would not have changed the outcome in the case.

In addition, McGrath argues that Draghi should have obtained records from Rent-A-Center to show that McGrath, not Freeman, rented the property in their home and should have cross-examined Freeman about inconsistencies in her claims of what property was damaged.  Both issues were raised and decided against McGrath in the previous summary judgment order.  Nothing in McGrath's subsequent filings has shown that Draghi's representation was ineffective based on those issues.

### 5.  Photographs

In Claim 6(i), McGrath faults Draghi for failing to call an expert witness at trial to testify that the photographs of Freeman's neck are different and do not show hand or finger prints.  The court previously found in favor of the Warden on McGrath's claim that Draghi provided ineffective assistance because he did not call a medical expert to testify about the photographs of Freeman's neck.  It is unclear what kind of expert McGrath is referring to in Claim 6(i).

As is discussed above, the letter from Dr. Thomas that
McGrath submitted contradicts McGrath's theory that the
photographs show different or inconsistent injuries.  The
photographs themselves, which McGrath also submitted, support
Dr. Thomas's opinion.  McGrath has not shown that Draghi
provided ineffective assistance of counsel based on the lack of
an expert to testify about the photographs of Freeman's neck.

      6.  <u>Opening Statement</u>

McGrath contends, in Claim 6(l), that Draghi's opening
statement shows misconduct, lack of professionalism, and lack of
an interest in representing him.  Specifically, McGrath objects
to the following part of the opening statement:

> Ladies and gentlemen, my client is innocent.  He's
> innocent until Mr. Cherniske proves to you otherwise.
> I could do absolutely nothing today.  Call absolutely
> no witnesses and question none of the State's
> witnesses.  And if the State hasn't met their burden,
> it's your obligation to find my client not guilty.

Trial Trans. May 24, 2012, at 24, doc. no. 8-5, p. 24.  The
claim is based on McGrath's misunderstanding of the opening.

It appears that McGrath did not exhaust this claim.  Even
if has been exhausted, it lacks merit.

McGrath apparently interprets the quoted part of Draghi's
opening statement to mean that the defense had no witnesses and
that Draghi was not defending him.  Instead, Draghi was
explaining the state's burden of proof, an important element of

a criminal defense.   Therefore, McGrath has not shown
ineffective assistance based on the opening statement.

### 7.  Booking Video

McGrath contends in Claim 6(h) that Draghi provided
ineffective assistance by failing to get a booking video to show
his demeanor when he was at the Epsom Police Station.   The
Warden points out that the issue of the booking video was raised
only as a due process claim in McGrath's discretionary appeal to
the New Hampshire Supreme Court.   For that reason, the claim is
not exhausted and cannot support McGrath's petition.

The claim would also fail on the merits.   In the due
process claim, McGrath argued that the state withheld the video.
It is not clear how Draghi's representation was ineffective if
the video was not available.   In addition, as is explained in
the context of the due process claim, McGrath has not shown that
a booking video existed or that it provided favorable evidence
to show that he could not have acted knowingly or purposefully
during the incident.   In the absence of a showing that favorable
evidence existed and was not introduced by Draghi, McGrath
cannot prove ineffective assistance of counsel based on a
failure to introduce the video at trial.

8.  <u>Circumstances of the Arrest</u>

In Claim 6, parts (m) and (n), McGrath challenges Draghi's decision not to cross-examine Cruz about his testimony that he intended to talk with McGrath, and not to arrest him, when he arrived at the house and his failure to move to suppress McGrath's "implied confession" when he surrendered to Cruz. McGrath argues that because Cruz knew there was a warrant for McGrath's arrest, he did plan to arrest him.  He also argues that his "implied confession" was illegally obtained because Cruz did not read the <u>Miranda</u> rights to McGrath.

McGrath challenged Draghi's decision not to cross-examine Cruz about the circumstances of McGrath's confession and his arrest in Claim 1, parts (a) and (d).  Summary judgment was granted in the Warden's favor.  Therefore, those issues are resolved and will not be reconsidered here.  The issue of <u>Miranda</u> rights and the implied confession was not raised in Claim 1.

In support of his motion for a new trial, McGrath raised an issue about the inconsistency between Cruz's police report, which described arresting McGrath, and Cruz's testimony, which described his voluntary surrender.  Draghi testified at the hearing on the motion that he decided not to cross-examine Cruz about the inconsistency to avoid emphasizing McGrath's actual confession and the implied confession of the voluntary

29

surrender.  The issue of challenging evidence of the implied
confession due to a failure to warn of Miranda rights was not
raised in the motion for a new trial and was only raised in
McGrath's appeal to the New Hampshire Supreme Court, which was
declined.  Even if the claim were exhausted, however, it would
fail on the merits.

McGrath deems his voluntary surrender to Cruz as an implied
confession.  He believes that Cruz should have provided a
warning of the Miranda rights before he voluntarily surrendered.
"Once an individual is in custody, police must advise the
arrestee of his or her constitutional rights before
interrogation." United States v. Candelario-Santana, 834 F.3d
8, 18 (1st Cir. 2016) (citing Miranda v. Arizona, 384 U.S. 436,
467–68 (1966)).  If a person is not warned of his Miranda
rights, any statement elicited during custodial interrogation is
inadmissible.  Id.

In this case, before he was taken into custody, McGrath
told Cruz that he choked Freeman.  McGrath then voluntarily
surrendered to Cruz.  Therefore, neither McGrath's actual
confession nor the implied confession by voluntarily
surrendering were inadmissible due to a lack of Miranda
warnings.

McGrath has not shown ineffective assistance of counsel
based on Draghi's decision not to cross-examine Cruz about the

arrest details and failure to move to suppress the "implied confession."

### 9.  Relationship Between Freeman and Cruz

In Claim 6(o), McGrath contends that Draghi provided ineffective assistance by failing to cross-examine Freeman and Cruz about Freeman's role in providing assistance to the Epsom police.  As is explained above in the context of McGrath's due process claim raising the same issue, Freeman and Cruz testified about their friendly relationship.  The additional information about Freeman's tip to the police years before McGrath assaulted her would not have changed the outcome in the case.

### 10.  Withdrawal from Representation

McGrath contends in Claim 6(q) that Draghi should have withdrawn from representing him because of violations of the New Hampshire Rules of Professional Conduct.  McGrath raised an issue about Draghi's representation based on his motion to withdraw for the first time in his "Motion to Amend Motion" filed on January 3, 2015, in Merrimack County Superior Court. The motion was filed after the court had denied his prior motion, and it does not appear that the court considered the motion to amend.  McGrath also raised an issue about representation in his appeal of the court's order denying his prior motion, arguing that Draghi helped the prosecutor.

31

One issue appears to arise from Draghi's withdrawal from representing McGrath in December of 2012.  Although Draghi's motion to withdraw does not appear to be included in the record, McGrath asserts that Draghi withdrew based on New Hampshire Rule of Professional Conduct 1.7(a), which pertains to representation under a conflict of interest.[11]  McGrath mistakenly assumes that Draghi withdrew under Rule 1.7(a)(1) because of a conflict due to representation of another client whose interests were adverse to McGrath's interests.  Based on that mistake, McGrath weaves a theory of conflicted representation from the beginning of the case.

Instead, it appears that Draghi withdrew under Rule 1.7(a)(2) because some of the issues to support a motion for a new trial were claims of ineffective assistance of counsel.  New counsel was appointed in January of 2013 to represent McGrath

---

[11] Rule 1.7(a) provides:
   (a) Except as provided in paragraphs (b) and (c), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
   (1) the representation of one client will be directly adverse to another client; or
   (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

for purposes of the motion for a new trial.  Therefore, even if the claim were exhausted, it fails on the merits.

Similarly, the issue about Draghi's remark that the prosecutor was new and would need help was not exhausted and would fail on the merits.  McGrath provides no evidence or any hint that Draghi helped the prosecutor during the criminal case. Draghi's remark does not show that he helped the prosecutor.

McGrath has not shown ineffective assistance of counsel based on a theory that Draghi should have withdrawn from representing him.

<u>Conclusion</u>

For the foregoing reasons, the Warden's motion for summary judgment (document no. 52) is granted.  All of the claims raised by McGrath have been resolved in favor of the Warden.

Because McGrath has not made "a substantial showing of the denial of a constitutional right," the court does not issue a certificate of appealability.  28 U.S.C. § 2253(c)(2).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph DiClerico, Jr.
United States District Judge

November 21, 2016
cc:  Paul J. McGrath, pro se
     Elizabeth C. Woodcock, Esq.